UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| **RANDI ROUSSEAU,**<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>**CLARK UNIVERSITY and**<br>**LAURA A. ROBINSON,**<br><br>　　　　　Defendants. | Case No. 22-cv-40118-DJC |

## MEMORANDUM AND ORDER

**CASPER, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　May 12, 2023

### I.　Introduction

Plaintiff Randi Rousseau ("Rousseau") has sued Defendants Clark University ("Clark") and Laura A. Robinson ("Robinson") alleging retaliation against, and interference with her exercise of rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.* (Counts I and II). Rousseau also alleged several state law claims against Clark, including under Mass. Gen. L. c. 175M, §§ 2(e), 9(a) (Counts III and IV) and c. 149 §§ 148C, 150 (Count V). D. 1. Robinson moves to dismiss Counts I and II. D. 11. For the reasons stated below, the Court DENIES Robinson's motion to dismiss, D. 11.

### II.　Standard of Review

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief." Germanowski v. Harris, 854 F.3d 68, 71 (1st Cir. 2017). Reading the complaint "as a whole," the Court must conduct a two-step, context-

1

specific inquiry.  García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013).  First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein.  Id.  Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit.  Id.  Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged."  Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face."  García-Catalán, 734 F.3d at 103 (quoting Iqbal, 556 U.S. at 678).

### III.    Factual Background

The following facts are drawn from Rousseau's complaint, D. 1, and are accepted as true for the purpose of resolving Robinson's motion to dismiss.

Clark, a private university, hired Rousseau as a Cataloging Librarian in 2003 and promoted Rousseau to Head of Cataloging in 2012.  D. 1 ¶¶ 2, 6–7; D. 1-3; D. 1-4.  During the 2019–20 academic year, Rousseau also served as acting Head of Collections.  D. 1 ¶ 9; D. 1-6.  Rousseau received "positive performance reviews . . . with overall rankings of 'Commendable' or 'Satisfactory'" from 2013 through 2019.  D. 1 ¶ 8; D. 1-5.  In 2020, Clark hired Robinson as the University Librarian, D. 1 ¶ 10, who became Rousseau's supervisor, id. ¶ 11.  Since Robinson's hiring, Rousseau has undergone three surgeries requiring the use of medical leave:  (1) rotator cuff reconstruction in June 2020, (2) breast reduction in August to September 2021 and (3) abdominoplasty in December 2021 to February 2022.  Id. ¶ 12.

Relating to her December 2021 to February 2022 leave, Rousseau points to two actions by Robinson.  First, Robinson issued a written warning to Rousseau "shortly after learning of Ms.

Rousseau's need for medical leave in December of 2021." Id. ¶ 15. The written warning raised "alleged dress code violations that had never been previously brought to Ms. Rousseau's attention, (i.e. wearing jeans and sneakers in the office) as well as a harmless interview question asked by Ms. Rousseau to an internal candidate (that is, whether the candidate would feel comfortable supervising her former supervisor)." Id. At some later point, Robinson "reversed her prohibition against wearing jeans and sneakers to the office." Id. ¶ 16. Second, during Rousseau's leave in January 2022, Robinson requested a "change of title" for Rousseau to "Cataloging and Metadata Librarian" due to the "needs of the library." D. 1-8; see D. 1 ¶ 18. This change "stripped [Rousseau] of her supervisory responsibilities." D. 1 ¶ 18.

Rousseau returned from leave on February 7, 2022 and needed to attend approximately ten medical appointments upon her return and through June 2022. Id. ¶ 19; D. 1-7. On June 13, 2022, Clark terminated Rousseau effective June 17, 2022. D. 1 ¶¶ 22-23; D. 1-9. Rousseau's termination letter confirmed that she was terminated during a June 13, 2022 meeting between Rousseau, Robinson, and two other Clark employees. D. 1-9. The termination letter noted that Rousseau had been "given feedback multiple times and follow up over the past months" on several areas of poor performance, including poor communication, calendar management, time keeping inaccuracies and her failure to adopt a "more enthusiastic approach to projects specific to your new job description." Id. Rousseau alleges that these performance issues "were not previously brought to Ms. Rousseau's attention as issues worthy of discipline, let alone termination" or raised in her December 2021 written warning. D. 1 ¶ 23.

IV.  **Procedural History**

Rousseau filed this action on October 19, 2022, D. 1.  Robinson has now moved to dismiss Counts I and II.  D. 11.  The Court heard the parties on the pending motion and took the matter under advisement.  D. 23.

V.  **Discussion**

The FMLA provides eligible employees with, among other things, the right to take twelve weeks of leave during any twelve-month period because the employee has "a serious health condition that makes the employee unable to perform the functions of the position of such employee."  Germanowski, 854 F.3d at 72 (quoting 29 U.S.C. § 2612(a)(1)(D)).  "Upon an employee's return, her employer must reinstate her to the same or an equivalent position, without any loss of accrued seniority."  Carrero-Ojeda v. Autoridad de Energía Eléctrica, 755 F.3d 711, 718 (1st Cir. 2014); see 29 U.S.C. § 2614(a)(1).  "[T]he FMLA and its accompanying regulations [also] make it unlawful for any employer to, among other things: (1) 'interfere with, restrain, or deny the exercise' of any FMLA right; or (2) retaliate or 'discriminat[e] against employees . . . who have used FMLA leave."  Carrero-Ojeda, 755 F.3d at 718 (alterations in original) (citations omitted).  Rousseau claims that Robinson both interfered with Rousseau's FMLA rights (Count II) and retaliated against Rousseau for exercising those rights (Count I).  D. 1. ¶¶ 25–40.

A.  **Interference with FMLA Rights (Count II)**

To establish a prima facie case for interference with the FMLA, a plaintiff must establish that, "(1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to leave under the FMLA; (4) she gave her employer notice of her

4

intention to take leave; and (5) her employer denied her FMLA benefits to which she was entitled." Carrero-Ojeda, 755 F.3d at 722 n.8.

Rousseau alleges that Robinson interfered with Rousseau's FMLA benefits by "demoting [her] and stripping her of her supervisory responsibilities in the middle of her approved leave." D. 1 ¶ 38. Rousseau asserts that she was thus not reinstated to a position equivalent to Head of Cataloging upon returning from leave. See 29 U.S.C. § 2614(a). Robinson, at least for the purposes of this motion, does not challenge Rousseau's eligibility for FMLA protections and entitlement to leave under the FMLA. See D. 1 ¶ 13 (asserting that "Rousseau met all statutory requirements for the use of medical leave under the FMLA with respect to [her] three surgeries"). Instead Robinson argues that she is not an "employer" within the meaning of the FMLA and thus is not individually liable. D. 12 at 4–7. On reply, Robinson also argues that Rousseau's new position upon returning from leave was equivalent to her former position. D. 22 at 2–3.

     1.  *Individual Liability for Supervisors*

"The FMLA applies only to 'employers,' which includes 'any person who acts, directly or indirectly, in the interest of an employer to any of the employees.'" Boadi v. Ctr. for Hum. Dev., Inc., 239 F. Supp. 3d 333, 348 (D. Mass. 2017) (quoting 29 U.S.C. §§ 2611(4)(A)(ii)(I), 2615(a)(1)–(2)). The Supreme Court and First Circuit have yet to address whether supervisors can be held individually liable as employers under the FMLA, but courts within the First Circuit have adopted the majority viewpoint that individual supervisors can be held liable for FMLA violations. See, e.g., id.; Eichenholz v. Brink's Inc., No. 16-cv-11786-LTS, 2017 WL 1902156, at *1 (D. Mass. May 9, 2017); Reilly v. Cox Enters., Inc., No. CA 13-785S, 2014 WL 4473772, at *10 (D.R.I. Apr. 16, 2014). To determine if a supervisor exercises sufficient control to be considered an employer, this Court must examine whether the supervisor "(1) had the power to hire and fire

5

the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; (4) maintained employment records and (5) had personal responsibility for making decisions that contributed to the alleged violation." Eissa v. Ledvance LLC, No. 21-cv-11515-NMG, 2022 WL 3446037, at *5 (D. Mass. Aug. 17, 2022) (quoting Limoli v. Delta Air Lines, Inc., No. 18-cv-10561-FDS, 2019 WL 6253269, at *5 (D. Mass. Nov. 22, 2019)". All five of these factors need not be present, but the second and fifth factors carry the most weight. Boadi, 239 F. Supp. 3d at 348.

Here, accepting all factual allegations as true and drawing all reasonable inferences in Rousseau's favor, the complaint plausibly alleges that Robinson exercised sufficient control over Rousseau to be considered an employer. The complaint alleges that Rousseau was "under Ms. Robinson's supervision." Id. ¶ 11. Robinson controlled the conditions of Rousseau's employment by disciplining alleged dress code and candidate interview violations and by changing Rousseau's job title and duties. Id. ¶¶ 15, 18. A personnel action form, attached and incorporated into the complaint, reflects that Robinson was responsible for Clark's failure to reinstate Rousseau to an equivalent position upon her return. D. 1-8 (stating that "Laura Robinson requested this change of title for Randi based on the needs of the library"). The Court may also reasonably infer from Rousseau's termination letter, also incorporated by reference and attached to the complaint, that Robinson had some involvement in Clark's termination decision. D. 1-9 (confirming Rousseau's termination following meeting with Robinson and asserting that Rousseau received supervisor feedback but failed to improve).[1] The complaint does not allege that Robinson determined the rate

---

[1] Robinson's argument that she was not involved in denying or approving Rousseau's leave misses the point. D. 11 at 5–6. As Rousseau's opposition acknowledges, "Ms. Rousseau has not alleged any deficiencies in the FMLA application or approval process," D. 15 at 12, but claims that Robinson interfered with her invocation of her FMLA rights and retaliated against her for her exercise of same.

6

or method of Rousseau's pay or maintained employment records.[2] Based upon the weight of the other factors, however, the Court concludes that Rousseau has adequately pled a claim against Robinson for individual liability under the FMLA. Reilly, 2014 WL 4473772, at *11 (denying motion to dismiss claims against individual defendants who directly and indirectly supervised plaintiff and, at least one of whom was informed of plaintiff's impending surgery).

Nor is the Court persuaded by Robinson's citations to Gregg and Eissa. Gregg, 599 F. Supp. 3d 17; Eissa, 2022 WL 3446037. The plaintiffs in Gregg and Eissa sought to hold individuals working in the human resources department individually liable for not preventing FMLA violations by plaintiffs' supervisors. Gregg, 599 F. Supp. 3d at 24 (dismissing FMLA claim against "member of the HR Department" who allegedly "had a unique opportunity and power to rectify [plaintiff's supervisor's] misconduct where it "is not a logical inference that [this person] had the ability to control any aspect of [plaintiff's] employment"); Eissa, 2022 WL 3446037, at *5 (concluding that FMLA allegations against vice president of human resources where plaintiff alleged that vice president "contributed to [FMLA violation] through his inaction" were not sufficient, but allowing plaintiff to seek leave to amend complaint as to the matter). Rousseau does not allege that Robinson is a human resources employee, but rather a departmental supervisor who had some measure of control over Rousseau's employment.

For all of these reasons, the Court concludes that the complaint states FMLA claims against Robinson for individual liability.

---

[2] Rousseau asks the Court to consider an affidavit containing supplemental facts regarding Robinson's supervisory role. D. 15 at 2; D. 15-1. The Court has not relied upon that affidavit in its ruling and declines to convert Robinson's motion to dismiss into a motion for summary judgment to consider materials outside the complaint. See Vt. Pure Holdings, Ltd. v. Nestle Waters N. Am., Inc., No. 03-cv-11465-DPW, 2006 WL 839486, at *9 n.9 (D. Mass. Mar. 28, 2006). The Court instead relied upon the well-pled allegations in the complaint, assuming them to be true as required for the resolution of a motion to dismiss.

### 2. Reinstatement to the Same or Equivalent Position

Robinson's argument that Rousseau's new position was equivalent to her former position as Head of Cataloging was raised for the first time in Robinson's reply memorandum, D. 22 at 1–3, even though the complaint identifies her "demotion" during FMLA leave as the basis for the interference claim, Count II. D. 1 ¶ 38. As such, Robinson has likely waived this argument. Noonan v. Wonderland Greyhound Park Realty LLC, 723 F. Supp. 2d 298, 349 (D. Mass. 2010) (declining to address new arguments in reply memorandum "that could have been raised in a supporting memorandum"). The Court nevertheless concludes that dismissal is unwarranted on the merits.

Under the FMLA an employee "shall be entitled, on return from such leave—(A) to be restored by the employer to the [previous] position . . . or (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." Watkins v. J & S Oil Co., 164 F.3d 55, 59 (1st Cir. 1998) (alternation in original) (quoting 29 U.S.C. § 2614(a)(1)(A)–(B)). This entitlement "does not extend to de minimis, intangible, or unmeasurable aspects of the job." 29 C.F.R. § 825.215(f). "An equivalent position is one that is virtually identical to the employee's former position in terms of pay, benefits and working conditions, including privileges, perquisites and status. It must involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority." Id. § 825.215(a).

During Rousseau's December 2021 to February 2022 leave, Robinson requested "a change of title" for Rousseau from "Head of Cataloging" to "Cataloging and Metadata Librarian." D. 1 ¶ 18; D. 1-8. Clark's personnel action form states that this was a "title change only" and that "[n]o salary is attached to it." D. 1-8. But unlike other cases, cf. Hillstrom v. Best W. TLC Hotel, 265

8

F. Supp. 2d 117, 126–27 (D. Mass.), aff'd, 354 F.3d 27 (1st Cir. 2003) (granting summary judgment against interference claim where employee resumed former duties with equal pay and benefits "albeit with a less expansive title"), these are not the only facts that Rousseau has alleged. Notably, Rousseau also alleges that that this "change of title" impacted Rousseau's status and job duties. D. 1 ¶¶ 18, 38; D. 1-9.

First, Rousseau alleges that she was "stripped" of her "supervisory responsibilities." D. 1 ¶ 18. Robinson cites Hillstrom for the proposition that the loss of supervisory authority is a *de minimis* change. D. 22 at 2–3; Hillstrom, 265 F. Supp. 2d 117, 126–27. But the plaintiff in Hillstrom oversaw all employees in his division prior to taking leave and lost supervision of only one engineer upon his return. Id. at 121–22, 126–27. Here, it is at least alleged that Rousseau lost all supervisory authority over the employee(s) she formerly oversaw. Drawing all inferences in Rousseau's favor, the Court finds it at least plausible at this stage that this change substantially reduced Rousseau's workplace status. See Brown v. Hartt Transp. Sys., Inc., 725 F. Supp. 2d 210, 217, 230 (D. Me. 2010) (denying summary judgment to defendant on an interference claim where the record showed that plaintiff "became subordinate to" coworker he formerly supervised after taking leave).

Second, Rousseau's termination letter identifies her failure to adopt "a more enthusiastic approach to projects specific to [her] new job description" as a reason for her termination. D. 1-9. This acknowledgement of Rousseau's "new job description" seems to undercut any argument that Rousseau's new position was a merely "recalibration of [her] title to more accurately describe the job that [she] had always performed." Hillstrom, 265 F. Supp. 2d at 127. For at least these reasons, Rousseau has plausibly pled that she was not reinstated at an equivalent position upon her return from FMLA leave.

Accordingly, the Court denies Robinson's motion to dismiss the FMLA interference claim (Count II).

### B.      Retaliation Under the FMLA (Count I)

To state an FMLA retaliation claim, Rousseau must plausibly plead that "(1) she availed herself of a protected FMLA right; (2) she was 'adversely affected by an employment decision;' and (3) 'there was a causal connection between [her] protected conduct and the adverse employment action.'"  Germanowski, 854 F.3d at 73 (alteration in original) (quoting Carrero-Ojeda, 755 F.3d at 719).  A plaintiff may establish the causal connection "directly or by inference." Colburn v. Parker Hannifin/Nichols Portland Div., 429 F.3d 325, 332 (1st Cir. 2005).  "'[V]ery close' temporal proximity between protected activity and an adverse employment action can satisfy a plaintiff's burden of showing causal connection."  Germanowski, 854 F.3d at 74 (quoting Sanchez-Rodriguez v. AT & T Mobility P.R., Inc., 673 F.3d 1, 15 (1st Cir. 2012)).  But temporal proximity alone is insufficient where the "larger picture undercuts any claim of causation." Carrero-Ojeda, 755 F.3d at 720 (1st Cir. 2014) (quoting Wright v. CompUSA, Inc., 352 F.3d 472, 478 (1st Cir. 2003)).

Robinson argues that Rousseau fails to adequately plead causal connection between her use of FMLA leave and the adverse employment actions that she experienced.  D. 12 at 8–9.  The complaint alleges three adverse employment actions:  the December 2021 written warning, the January 2022 demotion and the June 2022 termination.  See D. 1 ¶¶ 15, 18, 22. As alleged, none of Rousseau's supervisors expressed displeasure at her use of FMLA leave or connected that use to the adverse employment actions taken.  Rousseau instead asks the Court to infer causal connection from her prior positive performance reviews and the short time between her exercise of FMLA rights and the adverse actions.  D. 15 at 13–14.  Rousseau's performance reviews from

2013–2019, prior to taking FMLA leave, were positive. D. 1 ¶ 8. No performance reviews were provided for the years immediately preceding Rousseau's most recent December 2021 to February 2022 leave. See id. ¶ 11. Then, "shortly after learning of Ms. Rousseau's need for medical leave" and in the same month the leave began, Robinson issued the December 2021 written warning. Id. ¶ 15. Robinson also requested a change of title and job responsibilities for Rousseau during Rousseau's leave in or around January 2022. Id. ¶ 18; D. 1-8. Reading the allegations in the light most favorable to Rousseau at this juncture, the timing of these events suggests that Defendants retaliated against Rousseau for exercising her FMLA rights. Kleya v. Karl Storz Endovision, Inc., 385 F. Supp. 3d 99, 109 (D. Mass. 2019) (denying motion to dismiss FMLA retaliation claim where plaintiff, who had previously received positive reviews, was placed in modified position only after defendants learned of her plan to take leave).

The four-month gap between the Rousseau's return to work and her June 2022 termination is longer than has alone supported a finding of retaliatory motive in some cases. Colburn, 429 F.3d at 338 (granting summary judgment to employer against FMLA retaliation claim where employee was terminated "almost four months" after taking leave). Such a gap, however, does not bar Rousseau's FMLA claims and, in other cases, was factor supporting a retaliation claim. See Brown v. Juniper Networks, Inc., 405 F. Supp. 3d 235, 241 (D. Mass. 2019) (inferring FMLA retaliation where employee was reassigned upon returning from leave and terminated within six months for not meeting unreasonably high sales goal). It is at least some evidence that bears upon Robinson's retaliatory motive. Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 168 (1st Cir. 1998) (recognizing that "protected conduct closely followed by adverse action may justify an inference of retaliatory motive" (quoting Marx v. Schnuck Mkts., Inc., 76 F.3d 324, 329 (10th Cir. 1996))).

Rousseau further alleges that various legitimate reasons offered for these adverse actions were pretextual. The December 2021 warning was issued for violation of a dress code that was "subsequently reversed" and for a "harmless interview question" that facially appears appropriate. D. 1 ¶ 15. The June 2022 termination letter offers several legitimate reasons for Rousseau's termination, such as poor communication, calendar management and inaccurate timekeeping. D. 1-9. But Rousseau alleges that none of these issues were raised with her as "issues worthy of discipline" prior to her exercise of FMLA rights. D. 1 ¶ 23; see D. 15 at 13–14; see also Reilly, 2014 WL 4473772, at *6 (denying motion to dismiss where plaintiff exceeded expectations for two years, received no warning of termination and was fired two days after requesting leave). Moreover, as alleged, the issues raised in the December 2021 written warning were not raised again in the June 2022 termination letter. Accepting these allegations as true, they plausibly suggest that Rousseau was the subject of retaliation for asserting her FMLA rights. See Surprise v. Innovation Grp., Inc. / First Notice Sys., Inc., 925 F. Supp. 2d 134, 144, 147 (D. Mass. 2013) (denying summary judgment to defendant for FMLA retaliation claim where plaintiff was fired for "negativity" after making a protected complaint).

Moreover, Rousseau's allegations do not suggest that the adverse employment actions against her were based on issues predating her FMLA leave. See, e.g., Germanowski, 854 F.3d at 75 (dismissing FMLA retaliation claim where longstanding, emotionally-charged dispute with supervisor was likely cause for firing and thus retaliatory motive was implausible); Carrero-Ojeda, 755 F.3d at 720–21 (dismissing FMLA retaliation claim where alleged animus towards plaintiff and investigation into supposed misconduct by plaintiff predated her attempt to take FMLA leave); Haglund v. Estee Lauder Companies, Inc., 466 F. Supp. 3d 292, 298 (D. Mass. 2020) (dismissing FMLA retaliation claim because "[p]roximity alone is insufficient, particularly where . . . the

allegedly adverse action occurred either before or several months after [plaintiff] exercised her FMLA rights"). The Court views the allegations in the complaint in the light most favorable to Rousseau, including the timing of the December 2021 written warning, the four-month period between the end of Rousseau's leave and her termination, the absence of performance reviews for the period directly preceding Rousseau's leave and the credibility of several potential legitimate reasons for Rousseau's termination. For the purposes of surviving a motion to dismiss, Rousseau has pled a plausible retaliation claim.

Robinson also argues that she should not be held individually liable for retaliation under the FMLA because she is not an employer within the meaning of the statute. The Court has already concluded that the complaint adequately alleges that Robinson exercised sufficient control over Rousseau as a supervisor to be held individually liable for interference under the FMLA. See Section V(A)(1), supra. That analysis applies equally to the retaliation claim.

Accordingly, the Court denies Robinson's motion to dismiss the FMLA retaliation claim (Count I).

**VI.     Conclusion**

For the foregoing reasons, the Court DENIES Robinson's motion to dismiss, D. 11.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge